**STATE ex rel. CITY OF CRESTWOOD, Respondent,**

v.

**Janette LOHMAN, Director of Revenue, et al., Appellants.**

**No. WD 49350.**

Missouri Court of Appeals, Western District.

Dec. 13, 1994.

As Modified Feb. 28, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 28, 1995.

Application to Transfer Denied April 25, 1995.

**24**

Jeremiah W. (Jay) Nixon, Atty. Gen., Gretchen Garrison, Asst. Atty. Gen., Jefferson City, for appellants.

Harvey M. Tettlebaum, Jefferson City, Shulamith Simon, St. Louis, for respondent.

Before FENNER, C.J., P.J., and HANNA and LAURA DENVIR STITH, JJ.

FENNER, Chief Judge.

Appellants, Janette Lohman, Director of Revenue, and Department of Revenue, appeal the peremptory writ of mandamus issued by the Circuit Court of Cole County, Missouri, on March 22, 1994. The writ ordered appellants to perform their statutory functions incident to the administration, collection, enforcement and operation of the Capital Improvements Sales Tax enacted by the City of Crestwood, respondent herein, under section 94.577, RSMo Supp.1993, as that statute is construed in the court's order.[1]

The City of Crestwood (the City) is a municipal corporation located in St. Louis County, Missouri. On July 27, 1993, the Board of Aldermen of the City of Crestwood duly adopted Ordinance 3276 which established a sales tax in the amount of one-half of one percent on all retail sales made in the City for the purpose of funding capital improvements, including the operation and maintenance of capital improvements. This Capital Improvements Sales Tax was to become effective upon approval by a majority of the votes cast by qualified voters of the City at an election to be held on November 2, 1993.

The City submitted to the Board of Election Commissioners of St. Louis County (the Board) a certification of the propositions to be voted on at the November 2, 1993 election, including the proposal for the Capital Improvements Sales Tax. The City notified counsel for the Board that the proposition to be submitted to the voters was authorized by section 94.577, that section 94.577 authorized any city to submit for voter approval a proposition to levy a sales tax to fund capital improvements, except cities in St. Louis County, and that the exclusionary language was in violation of the provisions of the Mis-

---

1. All references to section 94.577 are to RSMo Supp.1993.

souri Constitution dealing with special legislation, Article III, Section 40(30).[2]

On August 31, 1993, the Board filed a Petition for Declaratory Judgment against the City in the Circuit Court of St. Louis County (hereinafter referred to as the St. Louis County action), seeking a declaratory judgment as to the rights, duties and responsibilities of the Board and the City with respect to the ballot proposition. In its petition, the Board alleged that the City is within the excluded class of municipalities set forth in section 94.577, that the City contends that section 94.577 violates the Missouri Constitution insofar as it excludes the City from its authorizing terms, and that the direction of the court is needed in resolving the Board's duties and responsibilities under sections 115.125, RSMo1986, and 115.127, RSMo Supp.1993, on the one hand, and section 94.577 on the other hand. The Board asked the court to enter its order, judgment, and decree, declaring the rights, duties and responsibilities of the Board and the City in connection with the City's notice of election and ballot proposal, whether the Board should place the proposal on the ballot, and that section 94.577 is valid and constitutional.[3]

In its answer to the Board's petition, the City alleged that the exclusion of cities in St. Louis County from section 94.577 is unconstitutional and violates Article III, section 40(30), of the Missouri Constitution in that "such exclusion is a special law where a general law can be made applicable and is neither open-ended nor rationally related to a legitimate legislative purpose." The City further alleged that the exclusionary provision is severable and that the remaining provisions of the statute authorize the City to adopt a sales tax for the funding of capital improvements with the approval of the voters of the City.

The office of the Attorney General of Missouri did not intervene in the action, stating in a letter (dated September 20, 1993) to the judge in the St. Louis County action:

This will advise of our position, *inter alia,* that a determination of the constitutionality of RSMo. § 94.577 is not directly at issue in this case, and need not be addressed at this juncture....

At issue is the duty of the Board ... to prepare ballots for submission to the voters of the City of Crestwood Ordinance 3276, which proposes a 'capital improvements' tax. In our view, such duties are ministerial only. The constitutionality of § 94.577 becomes material only upon submission to vote, or thereafter, in regard to the validity of the ordinance if passed.

2. Section 94.577.1 provides as follows:

The governing body of any municipality *except those located in whole or in part within any first class county having a charter form of government and not containing any part of a city with a population of four hundred thousand or more and adjacent to a city not within a county for that part of the municipality located within such first class county* is hereby authorized to impose, by ordinance or order, a one-eighth, a one-fourth, three-eighths, or one-half of one percent sales tax on all retail sales made in such municipality which are subject to taxation under the provisions of sections 144.010 to 144.525, RSMo, for the purpose of funding capital improvements, including the operation and maintenance of capital improvements, which may be funded by issuing bonds which will be retired by the revenues received from the sales tax authorized by this section or the retirement of debt under previously authorized bonded indebtedness. The tax authorized by this section shall be in addition to any and all other sales taxes allowed by law; but no ordinance imposing a sales tax under the provisions of this section shall be effective unless the governing body of the municipality submits to the voters of the municipality, at a municipal or state general, primary or special election, a proposal to authorize the governing body of the municipality to impose such tax and, if such tax is to be used to retire bonds authorized under this section, to authorize such bonds and their retirement by such tax, or to authorize the retirement of debt under previously authorized bonded indebtedness (emphasis added).

3. The Board amended its petition by interlineation and added the following language onto the end of paragraph (3) of the prayer of the petition (added language is emphasized):

(3) that said Statute, Section 94.577, Missouri Revised Statutes, 1986, as amended, (V.A.M.S. Supplement 1993) is valid and constitutional as regards the issues and contentions of the parties herein; *and in any event, whether or not said Statute is valid and constitutional as regards the issues and contentions of the parties herein;"*

Assuming, *arguendo*, that the constitutionality of § 94.577 is deemed to be directly at issue, it is not properly determinable in this case. Rule 87.04 provides that the Attorney General is to be served in any action for declaratory judgment in which a statute or ordinance is alleged to be unconstitutional. While a copy of the Petition was mailed to this office by the Board ..., the same was not in accordance with Rule 87.04 for the reason that the petition alleges that § 94.577 is constitutional, not unconstitutional. To the extent the Answer asserts a counterclaim challenging constitutionality, the Attorney General has not been named as a party or served as required by Rule 87.04.[4]

For reasons including that the Attorney General has not been made a party to this action, it is further our position that any declaration regarding the issues in this case do not prejudice the rights of this office (or any other person or agency not a party to the action).

The only issue framed by the pleadings of the Board and the City and the only real issue in question was the constitutionality of section 94.577. The Board took the position that if section 94.577 was constitutional, the Board should not go forward with the ballot proposal. The City argued that section 94.577 was unconstitutional and therefore the Board should place the proposal on the ballot.[5]

The cause was heard in the St. Louis County Circuit Court on September 20, 1993. Both parties introduced evidence and orally argued the issues. In its order and judgment, the court found that the exclusionary language of section 94.577 was unconstitutional, in violation of Article III, Section 40(30), of the Missouri Constitution, that the constitutionally offensive classification is severable, and that the remainder of the statute was a law complete in all respects and susceptible of enforcement. The court ordered that the exclusionary language of section 94.577 "is void and is stricken" from the statute. The court directed the Board to place the proposition on the ballot for the November 2, 1993 election. No appeal was taken from this order.

The ballot proposition was approved by the voters of the City at the November 2, 1993 election. The City sent a copy of Ordinance 3276, a copy of the certification of the election results, and a letter requesting confirmation that the sales tax would become effective

---

4. The record reflects the attorney for the City wrote a letter to the Attorney General's Office, dated September 7, 1993, which reads as follows:

> You have previously received a copy of the Petition for Declaratory Judgment in the above entitled cause, in anticipation that the constitutionality of Section 94.577, RSMo. would be challenged. I am enclosing a copy of the Answer in such case. The Answer does challenge *the constitutionality of the statutory provision,* as a violation of Article III, Section 40(30), Missouri Constitution. The Answer is forwarded to you pursuant to C.R. 87.04.

Furthermore, the attorney for the Board faxed a letter to the Attorney General's Office, dated September 8, 1993, in which he wrote, in relevant part:

> Today [the City] filed its Answer which does challenge the constitutionality of the said Statute, and the Court has set the case for trial and hearing on September 20, 1993, at 9:00 A.M. in Division 10 of the St. Louis County Circuit Court.
>
> I am herewith faxing you another copy of [the Board]'s said Petition, together with copy of [the City]'s Answer thereto. I am in receipt of a copy of correspondence from ... attorney

for [the City], in which she has also transmitted to you a copy of the said Answer.

> I would take the liberty to state that this appears to be a matter of sufficiently widespread public interest and concern in which participation by your office would be appropriate and warranted.

Thus, it is apparent that the Attorney General was served with a copy of the City's Answer to the Board's Petition for Declaratory Judgment.

5. In her concurring opinion, Judge Stith expresses the opinion that the mere fact that the board "refused" to place the proposal on the ballot creates a sufficient controversy between the parties. In response to her position it should be noted that the Board did not refuse to place the proposal on the ballot by the pleadings of its Petition For Declaratory Judgment. Rather, the Board merely sought direction from the court as to the correct course of action which the parties agreed depended upon the constitutionality of section 94.577. The City argued that section 94.577 was unconstitutional and the Board took no position. The court determined that section 94.577 was unconstitutional without controversy between the parties on the only question raised by the pleadings and presented to the court.

as of April 1, 1994 to the Office of the Director of Revenue. Thereafter, the City made demand on appellants to perform their statutory functions incident to the administration, collection, enforcement and operation of the Capital Improvements Sales Tax.

On March 3, 1994, the City filed a Petition in Mandamus in the Circuit Court of Cole County seeking the issuance of a Writ of Mandamus directing appellants to perform their statutory functions so as to assure the collection of the Capital Improvements Sales Tax as of April 1, 1994. The City alleged that the duties of appellants with respect to the tax are non-discretionary ministerial functions. The City further alleged that the failure of appellants to perform their ministerial functions so as to assure the collection of the tax as of April 1, 1994 is a breach of the appellants' obligations and will cause substantial damage and irreparable harm to the City.

The Circuit Court of Cole County issued a Preliminary Order in Mandamus on March 4, 1994, directing appellants to perform their statutory functions with respect to the Capital Improvements Sales Tax so that the tax is collected as of April 1, 1994 and further directing appellants to escrow said proceeds pending further order of the court.

On March 10, 1994, appellants filed a Motion to Dismiss the Petition in Mandamus and to Quash the Preliminary Order. Appellants argued that the judgment on which the City relies for its claim of "right" to collection of the tax was entered without jurisdiction and is therefore void, the Director, who was not a party to the action in which judgment was entered, is not bound thereby, and an adequate alternate remedy is available to the City.

On March 22, 1994, the Circuit Court of Cole County issued a Peremptory Writ of Mandamus, adopting the order entered in the St. Louis County action to the effect that the exclusionary language of section 94.577 is unconstitutional and that the remainder of the statute is a law complete in all respects and susceptible of enforcement. The court found the order in the St. Louis County action to be valid and binding on appellants and directed appellants to perform their stat-

utory functions incident to the administration, collection, enforcement and operation of the Capital Improvements Sales Tax. This appeal followed.

Appellants raise five points on appeal. In their first point, appellants argue that to the extent the court made an independent finding regarding the constitutionality of section 94.577, such finding was erroneous as an improper subject of a mandamus action. It is not entirely clear from the court's order whether it intended to make an independent finding as to constitutionality. However, it is clear that the court found the St. Louis County order to be binding on appellants. If the court did make an independent finding, pursuant to direct challenge by way of mandamus, determining section 94.577 to be unconstitutional, it was an improper subject of a mandamus action. *State ex rel. Gladfelter v. Lewis,* 595 S.W.2d 788, 790 (Mo.App.1980) (*citing State ex rel. Seigh v. McFarland,* 532 S.W.2d 206, 209 (Mo. banc 1976)).

█ It is well established that a writ of mandamus is appropriate only when the respondent has a clear duty to perform a certain act. *State ex rel. City of St. Louis v. Mummert,* 875 S.W.2d 108, 109 (Mo. banc 1994). Furthermore, the purpose of mandamus is to execute and not to adjudicate; it coerces performance of a duty already defined by law. *State ex rel. Gladfelter v. Lewis,* 595 S.W.2d at 790 *citing State ex rel. Phillip v. Public School Retirement System,* 262 S.W.2d 569, 573 (Mo. banc 1953). Mandamus may not be used to establish new rights, but instead may be used only to enforce existing rights. *State ex rel. City of Blue Springs v. Rice,* 853 S.W.2d 918, 920 (Mo. banc 1993). Mandamus will not lie to directly challenge and thereby determine the validity or constitutionality of an ordinance or statute respecting the duty involved. *State ex rel. Seigh,* 532 S.W.2d at 209.

█ The underlying premise of an action in mandamus is to enforce existing rights, not to directly attack a matter otherwise established under the law. Nonetheless, in an effort to enforce a law its validity can be brought into question. In this regard, there is clear authority allowing an entity

against which a law is sought to be enforced, by way of mandamus, to challenge the validity of that law. This was the case in *State ex rel. City of Blue Springs v. Rice* and *State ex rel. City of St. Louis v. Mummert.*

■ Respondent would have us hold that because constitutionality can be addressed in deciding whether an existing law is enforceable that this necessarily allows a direct attack on the constitutionality of an existing law, by the relator, in an effort to seek relief by way of mandamus. We do not believe that the law supports this position and we find the cases argued by respondent not to support its position.

Respondent argues that in addition to *City of Blue Springs v. Rice* and *City of St. Louis v. Mummert*, the following cases support its position: *State ex rel. Bunker Resource Recycling & Reclamation, Inc. v. Mehan*, 782 S.W.2d 381 (Mo. banc 1990); *State ex rel. Public Defender Comm'n v. County Court of Greene County*, 667 S.W.2d 409 (Mo. banc 1984); *State ex rel. Holiday Park, Inc. v. City of Columbia*, 479 S.W.2d 422 (Mo. banc 1972); *State ex rel. Continental Oil Co. v. Waddill*, 318 S.W.2d 281 (Mo.1958); and *State ex rel. Triangle Fuel Co. v. Caulfield*, 355 Mo. 330, 196 S.W.2d 296 (1946).

In *State ex rel. Bunker Resource Recycling & Reclamation, Inc. v. Mehan*, 782 S.W.2d 381 (Mo. banc 1990), there was a counterclaim for declaratory judgment. A statute was declared unconstitutional and once the unconstitutional statute was no longer an obstacle, mandamus was found to be appropriate. In *State ex rel. Bunker*, the constitutionality of the statute in question was directly before the court because of the counterclaim for declaratory judgment. *State ex rel. Bunker* does not support respondent in the case at bar.

In *State ex rel. Public Defender Comm'n v. County Court of Greene County*, 667 S.W.2d 409 (Mo. banc 1984), the relator sought to enforce the new statute which created the Public Defender Commission giving said Commission the power to establish local offices. In *State ex rel. Public Defender Comm'n*, the respondent argued that the statute was not enforceable because it increased the level of service required of the county beyond existing law in violation of Mo. Const. art. X, § 21. In deciding whether the new statute was enforceable, the previous statute was held to be unconstitutional. The county argued that the previously repealed statute established the county's level of service at less than the new statute. This case did not involve a direct challenge to the constitutionality of a statute by way of mandamus. Rather, it involved an effort to enforce an existing law. The constitutional question arose as a matter of defense to enforcement of the existing statute.

The other three cases argued by respondent, *State ex rel. Holiday Park, Inc. v. City of Columbia*, 479 S.W.2d 422 (Mo. banc 1972), *State ex rel. Continental Oil Co. v. Waddill*, 318 S.W.2d 281 (Mo.1958), and *State ex rel. Triangle Fuel Co. v. Caulfield*, 355 Mo. 330, 196 S.W.2d 296 (1946), were all decided prior to the opinion of the Missouri Supreme Court in *State ex rel. Seigh v. McFarland*, 532 S.W.2d 206 (Mo. banc 1976). As referenced previously herein, in *McFarland* the court held that mandamus will not lie to determine the validity or constitutionality of an ordinance or statute respecting the duty involved. *Id.* at 209 To the extent that any of these cases might be otherwise inconsistent with *McFarland*, they are not controlling.

In *State ex rel. Holiday Park, Inc. v. City of Columbia*, 479 S.W.2d 422 (Mo. banc 1972), the relator sought the issuance of a building permit. Relator sought to enforce the "Enabling Act of 1925" under which it argued that certain "interim zoning" by respondent was invalid. Mandamus was held to be appropriate to direct the issuance of the building permit. In this case the "Enabling Act of 1925" was the law sought to be enforced and in deciding that question the "interim zoning" was declared invalid.

In *State ex rel. Continental Oil Co. v. Waddill*, 318 S.W.2d 281 (Mo.1958), a mix of issues were presented among which were the authority of certain ordinances and the nature of the right acquired by issuance of a permit. In deciding these questions by way of mandamus, the court also addressed the constitutionality of an ordinance in question. Finding that the relator had met all the

requirements of ordinances requisite to the issuance of the permit in question, mandamus was held to lie. *Id.* at 288. It appears that there was a direct constitutional challenge by way of mandamus in *Waddill* mixed with other issues. However, to the extent that the direct constitutional challenge was allowed, *Waddill* is inconsistent with and overruled by *McFarland.*

Finally, in *State ex rel. Triangle Fuel Co. v. Caulfield,* 355 Mo. 330, 196 S.W.2d 296 (1946), the court addressed consolidated appeals seeking mandamus and injunctive relief. In this case, a permit was denied based upon an ordinance that was held to be unconstitutional. Mandamus and injunctive relief were sought. Since constitutionality was appropriate for consideration by way of injunctive relief, the question was properly before the court. *See Burnau v. Whitten,* 642 S.W.2d 346 (Mo. banc 1982).

We do not find the cases cited by respondent to support its argument to allow a relator to directly attack the constitutionality of a statute by way of a proceeding in mandamus. Since constitutionality of a statute cannot be directly attacked by the relator by way of mandamus, it is not necessary for us to decide in the case at bar whether the trial court made an independent finding in regard to constitutionality. If the court did make an independent finding in regard to constitutionality by way of direct attack in mandamus, it was an improper subject. On the other hand, as addressed subsequently herein, the St. Louis County action was not binding on appellants. Consequently, the trial court was in error regardless of the nature of its finding.

In points two through four, appellants argue that the court erred by issuing a writ of mandamus based on the prior judgment of the St. Louis County Circuit Court because such prior judgment was entered without jurisdiction in that: (1) the parties lacked adverse interests on the issue of the constitutionality of section 94.577; (2) the issue of the constitutionality of section 94.577 was not ripe for review at the time presented; and (3) the Director, who was an indispensable party, was neither named nor served. Thus, appellants argue, the prior judgment was

void and without force or effect. In their final point on appeal, appellants argue that the court erred by issuing a writ of mandamus based on the prior judgment of the St. Louis County Circuit Court because such prior judgment was entered in a declaratory judgment action to which the Director was not a party and, therefore, the Director was not bound thereby.

We reverse the peremptory writ of mandamus issued by the Circuit Court of Cole County which was based on the St. Louis County judgment, and we remand the cause for the trial court to enter an order quashing the writ.

Before reaching the merits of appellants' argument, however, we must first address respondent's argument that appellants lack standing to make a collateral attack on the judgment of the St. Louis County Circuit Court.

### Standing

■ Respondent argues that appellants' effort to collaterally attack the St. Louis County judgment "fails because the Director lacks the requisite interest." Respondent suggests that appellants had no interest in the St. Louis County declaratory judgment action (and, thus, no standing to question its validity in the Cole County mandamus proceeding) because section 94.577 was triggered only upon approval by voters, an event occurring subsequent to the St. Louis County action.

■ Standing requires that a party seeking relief have a legally cognizable interest in the subject matter of the challenged decision and that there be a threatened or actual injury. *Eastern Missouri Laborers Dist. Council v. St. Louis County,* 781 S.W.2d 43, 46 (Mo. banc 1989). A judgment that is void because the court rendering it did not have jurisdiction of the subject matter may be attacked collaterally by any one directly interested therein. *McCoy v. Briegel,* 305 S.W.2d 29, 34 (Mo.App.1957). A judgment rendered by a court having no jurisdiction is a mere nullity, and will be so held and treated whenever and for whatever

purpose it is sought to be used or relied upon as a valid judgment. *Id.*

We find that appellants have standing to attack the validity of the St. Louis County judgment. By the issuance of the writ of mandamus from the Cole County court, appellants were ordered to perform all statutory functions incident to the collection and enforcement of the Capital Improvements Sales Tax. The mandamus proceeding served to enforce the St. Louis County judgment against appellants. The St. Louis County judgment found the exclusionary language of section 94.577 to be unconstitutional and ordered that such language "is void and stricken." The St. Louis County court further ordered that the Capital Improvements Sales Tax proposition be placed on the ballot. The Cole County court, in issuing its peremptory writ of mandamus, adopted the order of the St. Louis County court "to the effect that the exclusionary language of § 94.577, RSMo. is unconstitutional ..., and that the remainder of the statute is a law complete in all respects and susceptible of enforcement." The court found the order of the St. Louis County court to be valid and binding on appellants.

In pertinent part, section 94.577.5 requires the Director of Revenue to collect "the additional tax authorized under this section." Section 94.577.1 excepts cities in St. Louis County from being able to levy a sales tax to fund capital improvements. Therefore, the Director of Revenue is not authorized by statute (section 94.577) to collect the tax in question. Appellants have an interest in determining the Director's responsibility under the circumstances presented here. Respondent's argument that appellants lack standing is denied. We therefore address the merits of this appeal.

### Declaratory Judgment Actions

■ Initially, we note that in a declaratory judgment action, the trial court is limited to determining actual controversies at the time of the declaratory judgment. *Schreiner v. Omaha Indem. Co.,* 854 S.W.2d 542, 544 (Mo.App.1993). Declaratory judgments may not be used to adjudicate speculative situations which may never come to pass. *Id.*

The test for "actual controversy" is whether there is a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *Butler v. Dowd,* 979 F.2d 661, 673 (8th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 2395, 124 L.Ed.2d 297 (1993).

■ Thus, a party may seek declaratory judgment when the action involves a justiciable controversy, a legally protectable interest, and an issue ripe for review. *Gunnels v. Valley Forge Ins. Co.,* 854 S.W.2d 65, 66 (Mo.App.1993). A mere difference of opinion or disagreement or argument on a legal question does not afford adequate grounds for invoking the judicial power. *City of Joplin v. Missouri Lead and Zinc Co.,* 861 S.W.2d 157, 160 (Mo.App.1993).

### Adverse Interests

■ Appellants argue that the St. Louis County judgment was without effect because the parties lacked adverse interests on the issue of the constitutionality of section 94.577. Appellants contend that this lack of adverse interest is shown by the following: (1) The petition filed by the Board did not ask for a declaration that section 94.577 is unconstitutional; (2) In a letter to the Attorney General, the Board stated that neither it nor St. Louis County were "in a position" to defend the statute; (3) At the hearing itself, counsel for the Board disclaimed any interest adverse to the City by stating, "We have already indicated and made manifest that the Plaintiff Board ... does not take an adversary position in this matter or contend either for constitutionality or unconstitutionality;" and (4) The judge disclosed a bias in favor of the Board's only witness and there was no objection by the City.

We agree, and the record reflects, that the parties lacked adverse interests on the question of constitutionality and since the State was not made a party, the judgment is not binding on the State. Finding these matters to be dispositive, it is not necessary to address appellants' other arguments herein.

In the prayer portion of its petition for declaratory judgment, the Board stated:

WHEREFORE, Plaintiff prays this Court to enter its order, judgment, and decree, declaring: (1) the rights, duties and responsibilities of Plaintiff, Defendant and other parties herein, if any, in connection with Defendant's said Notice of Election and Ballot Proposal; 2) that Plaintiff be directed that it not place the aforesaid proposal of Defendant on the ballot of the said election on November 2, 1993, and, in any event, whether or not Plaintiff should place said proposal on the ballot; (3) that said Statute, Section 94.577, ... is valid and constitutional as regards the issues and contentions of the parties herein; *and in any event, whether or not said Statute is valid and constitutional as regards the issues and contentions of the parties herein;* [6] (4) that Plaintiff be awarded its costs and attorneys' fees expended herein; and (5) such other and further relief as the Court may deem to be meet and proper in the premises.

In its answer, the City argued that the exclusionary language of section 94.577 is unconstitutional and that the Board is obligated to place the proposal on the ballot for the November 2, 1993 election.

In a letter to the Attorney General's Office, dated September 17, 1993, the attorney for the Board stated, in pertinent part, as follows:

As you are aware from my communications with your office and from the September 9, 1993 letter which John A. Ross, St. Louis County Counselor, sent to your office, *neither the Board of Election Commissioners nor St. Louis County will be in a position to defend the said statute [section 94.577].* (emphasis added)

At the hearing on September 20, 1993, a witness for the Board, the Republican Director of Elections, testified, in pertinent part, as follows:

Q [counsel for the Board]: What action did your office take with regard to such certification [containing the proposal for the Capital Improvements Sales Tax]?

A: Well, since there appeared to be a conflict here which had been raised earlier actually in the newspaper that perhaps we did not have the authority to place this particular issue on the ballot because there was a conflict with a state statute we took the matter to our attorney ... and to the Board ... for their determination.

Q: What action did the Plaintiff Board ... determine to take in this matter?

A: The board directed us not to place this particular issue on the November 2nd ballot and to seek a declaratory judgment.

Q: What relief is the Board ... asking of the Court in this petition for declaratory judgment?

A: As I see it, for the Court to make a determination whether this particular statute applies here and whether the city of Crestwood has the authority to place this particular issue on the ballot.

Q: *Does the Election Board advocate a position one way or the other in this matter?*

A: *No.* (emphasis added)

In closing statements, counsel for the City argued, in part, as follows:

We believe that the fact that under the language of section 94.577 only cities in St. Louis County are precluded from utilizing that statute clearly substantiates that it is a law which is a local or special law and that there is no legitimate purpose for excluding only cities located within St. Louis County.

We also believe that the invalid provision of section 94.577 which is simply the exclusionary language describing the cities in St. Louis County, that exclusionary language is severable and it should be deleted and with that deletion section 94.577 leaves a complete plan which is available to any city to proceed to seek voter approval for the sales tax for capital improvements.

Counsel for the Board responded as follows:

*We have already indicated and made manifest that the Plaintiff Board ... does not take an adversary position in this matter or contend either for constitutionality or unconstitutionality.*

---

6. Emphasized language was added in an Amendment by Interlineation.

However, just in the interest of getting everything in front of the Court, I would like to say that there is—first of all, there is a presumption of constitutionality of which the Court is well aware.

\* \* \* \* \* \*

I just wish to point out not in any kind of an argumentative sense but only in the interest of thoroughness that the Courts have held population formulas to meet constitutional standards of generality and openness.

\* \* \* \* \* \*

The only other point I would like to make as objectively as I can state and not on an argumentative basis is that on the question of severability I think there is a serious question because the exclusionary language of the statute subsection one of section 94.577 is the predicate for the whole statute. It is the foundation. It is the corner stone. . . . In a general sense I think that severability is not appropriate language where the language to be severed is integral and prerequisite to the rest of the statute. (emphasis added)

Based on the record before us, we find that the City and the Board lacked adverse interests as to the meaning and effect of section 94.577. With regard to the constitutionality of section 94.577, there was no justiciable controversy. Additionally, although the State was given notice of the action, it was not made a party and therefore the State is not bound by the judgment. *Land Clearance For Redevelopment Auth. v. City of St. Louis,* 270 S.W.2d 58, 63 (Mo. banc 1954). Thus, the Cole County Circuit Court improperly relied on that judgment and held the judgment binding on the State in issuing its peremptory writ of mandamus.

The judgment of the trial court issuing a peremptory writ of mandamus, based on the declaratory judgment of the St. Louis County Circuit Court, is reversed and the cause is

remanded for the trial court to enter an order quashing the writ.

HANNA, J., concurs.

LAURA DENVIR STITH, J., concurs in separate concurring opinion.

**LAURA DENVIR STITH, Judge,** concurring.

I concur that the Cole County Circuit Court was not bound by the earlier decision of the St. Louis County Circuit Court as to the constitutionality of section 94.577, RSMo Supp.1994, and that the writ of mandamus should be quashed on remand. I write separately because I disagree with the rationale used by the majority to reach this result.

The majority holds that the City of Crestwood and the St. Louis County Board of Election Commissioners ("the Board") were not sufficiently adverse as to the issue of the constitutionality of the exception of St. Louis County from the compass of section 94.577 ("the exception") to create a justiciable controversy on that issue. I would agree with the majority if the City of Crestwood or the Board had simply filed the Declaratory Judgment action to ascertain whether the statutory exception of St. Louis County was unconstitutional before placing the tax proposition on the ballot. As stated in *Financial Guar. Ins. v. City of Fayetteville,* 943 F.2d 925 (8th Cir.1991):

> "[W]hen the parties have no legal dispute, and when the parties request the same relief, there is no case or controversy as required by Article III and the court lacks jurisdiction to grant the requested relief."

*Id.* at 929. *Wentzville Pub. Sch. Dist. v. Paulson,* 699 S.W.2d 132 (Mo.App.1985), applied this principle in holding that no bona fide controversy exists between two parties where they do not make opposing contentions about the meaning of a statute, but rather "both seek only an interpretation of [it]." *Id.* at 134.[1]

---

1. In a situation even more analogous to the instant case, *Harford County v. Schultz,* 280 Md. 77, 371 A.2d 428, 429 (1977), specifically held that no case or controversy arose where the plaintiff attacked the validity of a provision of a county charter and the nominal defendant took no position as to the validity of the provision. *See also City of Peoria v. General Elec. Cablevision Corp.,* 690 F.2d 116, 120 (7th Cir.1982) (no case or controversy if neither party asserted rule was valid).

I believe, however, that sufficient adversity was created by the fact that, even though the Board declined to defend the constitutionality of the exception, it specifically refused to place Crestwood's tax proposition on the ballot unless ordered to do so by the court.[2] Thus, in the absence of an order from the Circuit Court, Crestwood could not submit its proposed capital improvements tax to a vote. Crestwood and the Board were, consequently, adverse as to the ultimate issue of placing the tax proposition on the ballot.

As Professor Wright notes, such adversity provides one of the few circumstances in which a case or controversy does exist even though neither of the parties to the action are themselves willing to defend the constitutionality of the statute in question. 13 Charles A. Wright, et al., *Federal Practice and Procedure* § 3530, at 325 (2d ed. 1984). The United States Supreme Court applied this principle in *I.N.S. v. Chadha*, 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983). In that case, both the INS and Mr. Chadha agreed that a particular statute was unconstitutional. However, the INS stated that it would nonetheless deport Mr. Chadha as required by the statute unless ordered otherwise by the Court. In light of the adversity of the parties as to the ultimate issue of deportation, the United States Supreme Court held:

> "We agree with the Court of Appeals that 'Chadha has asserted a concrete controversy, and our decision will have real meaning: if we rule for Chadha, he will not be deported; if we uphold § 244(c)(2), the INS will execute its order and deport him.' "

462 U.S. at 939–40, 103 S.Ct. at 2778.

Similarly, *Adams v. Morton*, 581 F.2d 1314 (9th Cir.1978), held that sufficient adversity of the parties was shown where the Secretary of the Interior refused to distribute money to which the appellees claimed they were entitled, stating:

> "The fact that the Secretary agrees with the appellees' statutory interpretation does not affect the power of the court to adjudicate otherwise. Appellant's cases on collusive litigation are inapposite and have no bearing on the record before us."

*Id.* at 1319.[3]

Missouri appears to have applied a similar rule in *City of St. Louis v. Crowe*, 376 S.W.2d 185 (Mo.1964). *Crowe* found the parties were sufficiently adverse because they disagreed as to the ultimate issue before the Court, even though they agreed as to the resolution of certain of the legal questions before the court, stating: "[w]hile agreeing in some respects, the City and the Board are adversary parties in that the Board is threatening to purchase the adapters and the City is objecting thereto." 376 S.W.2d at 189.

These cases are directly applicable here. The Board may not have wanted to defend the constitutionality of the exception of St. Louis County from the provisions of section 94.577 authorizing a capital improvements tax, but it certainly refused to place such a tax on the ballot until the constitutionality of that exception was determined. The Board and the City of Crestwood were thus sufficiently adverse to create a case or controversy, the St. Louis County Circuit Court had jurisdiction. Its judgment is not void *ab initio*, and is binding on the parties to that lawsuit.

I nonetheless concur with the majority's conclusion that the St. Louis County Circuit Court's decision was not binding on the Director of Revenue. As noted in *Jessin v. Shasta County*, 274 Cal.App.2d 737, 79 Cal. Rptr. 359 (1969), where (as in the St. Louis County action), no party has briefed important questions of law which the Court is being asked to answer, "the trial court should have declined to express itself on the public

---

**2.** The majority notes that this fact was not stated in the Petition itself. It was, however, testified to at the hearing without objection and the St. Louis County Circuit Court so found in its decision ordering placement of the tax increase on the ballot.

**3.** *Accord Kentucky v. Indiana*, 281 U.S. 163, 173, 50 S.Ct. 275, 277, 74 L.Ed. 784 (1930) (case or controversy existed because "[t]he state of Indiana, while desiring to perform its contract, is not going on with its performance because of a suit brought by its citizens in its own court. There is thus a controversy between the states, although a limited one.").

welfare aspects of the so-called 'controversy'". *Id.* 79 Cal.Rptr. at 364. The United States Supreme Court recognized a similar principle when it stated that, even if a minimal case or controversy exists, where the issues are not fully briefed and presented to the court, then:

> "Of course, there may be prudential, as opposed to Art. III, concerns about sanctioning the adjudication of these cases in the absence of any participant supporting the validity of [the statute]."

*I.N.S. v. Chadha,* 462 U.S. at 940, 103 S.Ct. at 2778. Were this case on direct appeal, I would rely on these principles and remand for additional briefing by an amicus curiae on the constitutional issue.[4] However, no appeal was taken from the St. Louis County Circuit Court's decision and the issue here is whether that decision will be given collateral effect in this suit for mandamus against the Director of Revenue. The answer is no. Rule 87.04 itself states that "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, *and no declaration shall prejudice the rights of persons not parties to the proceedings.*" (emphasis added).

While the Attorney General did receive Rule 87.04 notice of and an opportunity to intervene or be heard in the St. Louis County Circuit Court action, Crestwood admitted in its answer below that this did *not* make the Director of Revenue a party to that action. Moreover, it is not contended that the State was either in privity with a party to the St. Louis County suit, or controlled that litigation. To the contrary, it is undisputed that the Attorney General specifically declined to defend on the constitutional issue in the St. Louis County action because he believed this issue was not ripe for determination. The decision in the St. Louis County Circuit Court is therefore not binding on the State, as it was a non-party to that action. As stated in *Martin v. Wilks,* 490 U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989):

> "[A] party seeking a judgment binding on another cannot obligate that person to intervene, he must be joined.... Joinder as a party, rather than knowledge of a lawsuit and an opportunity to intervene, is the method by which potential parties are subjected to the jurisdiction of the court and bound by a judgment or decree.... The linchpin of the 'impermissible collateral attack' doctrine—the attribution of preclusive effect to a failure to intervene—is therefore quite inconsistent with Rule 19 and Rule 24."

*Id.* at 764–65, 109 S.Ct. at 2186. It is equally inconsistent with Missouri law. *See Land Clearance for Redevelopment Authority v. City of St. Louis,* 270 S.W.2d 58, 63 (Mo. banc 1954) (non-party State was not bound by decision).[5]

Crestwood alternatively argues that the trial court's issuance of a writ of mandamus should be affirmed because the trial court independently determined that the statute's exception for St. Louis County was an uncon-

---

**4.** The latter is what occurred in *Chadha;* the Supreme Court approved of the fact the Court of Appeals invited Congress to submit amicus briefs in support of the statute in question, stating, "We have long held that Congress is the proper party to defend the validity of a statute when an agency of government, as a defendant charged with enforcing the statute, agrees with plaintiffs that the statute is inapplicable or unconstitutional." *Id. See also Land Clearance for Redev. Auth. v. City of St. Louis,* 270 S.W.2d 58, 63 (Mo. banc 1957) (intervenor provided adversity); *Brennan v. Occupational Safety & Health Review Comm'n,* 505 F.2d 869, 870–71 (10th Cir.1974) (a case or controversy was presented because an interested party had filed an amicus brief attacking the regulation).

**5.** *Had the Attorney General actually taken a fuller part in the St. Louis County action by arguing* the constitutional issue following notice under Rule 87.04, preclusion would present different issues. As noted in *Adams v. Morton,* 581 F.2d 1314 (9th Cir.1978):

> "[A] non-party who thus participates in litigation has an interest sufficiently close to the matter in litigation, and had adequate opportunity to litigate in support of or in defense against the cause of action on which the suit is based, the policies underlying the doctrine of judicial finality require that the participating non-party should be bound by the resulting judgment to the same extent as though he were a party to the action."

*Id.* at 1318. *Adams* held that, even though the interested party had not formally intervened, it was bound by the judgment because of its full, if informal, participation in the case.

stitutional special law. As the majority notes, before we can examine the merits of this ruling we must determine whether Missouri law permits the trial court to issue a writ of mandamus where, as here, to do so he must first declare a statute unconstitutional.

Crestwood argues that the trial court did have authority to declare the exception unconstitutional. In support, it cites to numerous cases in which the Missouri Supreme Court or Missouri Court of Appeals have examined the constitutionality of a statute in mandamus actions.[6] I agree that, on their face, many of those cases could appear to allow the use of mandamus sought by Crestwood in this action insofar as they hold a statute invalid in the course of determining whether mandamus should issue.

As the majority opinion notes, however, such an interpretation of these cases is inconsistent with the basic principles guiding the grant of writs of mandamus: mandamus may not be used to adjudicate or to establish new rights, but rather is to be used solely to execute or to enforce established law and existing rights. The Supreme Court reaffirmed the viability of these principles only a few months ago. *See State ex rel. Chassaing v. Mummert*, 887 S.W.2d 573 (Mo. banc 1994) (mandamus may not be used to establish a new right, but only to compel performance of an existing one; it is to execute, not to adjudicate). Moreover, prior Missouri cases have relied on these principles in rejecting the use of mandamus where the writ could issue only if the court first held a statute invalid.[7]

To the extent it is possible to do so, this Court is bound to follow both the latter cases and those cited by Crestwood. The majority's analysis of all of these cases does a brilliant job of doing just that, and thereby brings order and sense to what is otherwise a very confusing and difficult area of the law. It will provide essential guidance to those seeking mandamus relief in cases involving the validity of a statute until such time as the

Missouri Supreme Court should decide to reexamine and simplify the rules governing the availability of mandamus in such cases.

For these reasons, I concur that the Cole County Circuit Court erred in issuing its writ of mandamus against the Director of Revenue based either on the supposedly preclusive effect of the St. Louis County Circuit Court judgment, or on its own independent determination of unconstitutionality.

This does not leave the City of Crestwood without a remedy. It may file a new declaratory judgment action, to which the Director is made a party, in which it asserts the unconstitutionality of the exception in section 94.577 and the obligation of the Director to administer, collect and enforce the tax. Presumably, the Director (unlike the Election Board) will affirmatively defend the constitutionality of the exception and the issues will be joined and finally resolved.

---

6. *See* cases cited by majority *supra*, op. at 27–28.

7. *See, e.g., State ex rel. Seigh v. McFarland*, 532 S.W.2d 206, 209 (Mo. banc 1976), and *State ex rel. Gladfelter v. Lewis*, 595 S.W.2d 788, 790

(Mo.App.1980) (both holding that mandamus lies only to enforce a plain ministerial duty, and a duty cannot be considered plain or ministerial if it only exists once one declares a statute unconstitutional).